UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| C-PORT/STONE, LLC. | CIVIL ACTION |
| VERSUS | NO: 17-256 |
| GULF LOGISTICS, LLC *in personam*, M/V GREY CUP *in rem* | SECTION: "A" (5) |

### ORDER AND REASONS

The following motions are before the Court: **Motion for Summary Judgment (Rec. Doc. 56)** filed by Plaintiff, C-Port/Stone, LLC; **Motion for Summary Judgment (Rec. Doc. 55)** filed by Defendants, Gulf Logistics, LLC and M/V GREY CUP. Both motions are opposed. The motions, noticed for submission on September 19, 2018, are before the Court on the briefs without oral argument.

### I. BACKGROUND

Plaintiff C-Port/Stone, LLC filed this action against Gulf Logistics, LLC *in personam* and the M/V GREY CUP *in rem* to recover payments for fuel, lube oil and water that were provided to the M/V GREY CUP as vessel necessaries.[1] C-Port/Stone sells diesel fuel, bunker fuel, lubricants and other supplies. Gulf Logistics owns the

---

[1] The original amount sued upon, $216,737.84, included invoices for fuel that was delivered to Whistler as "cargo." The parties agree that this cargo is valued at $103,210.95, and that this total amount did not give rise to a maritime lien. C-Port/Stone confirmed in its reply memorandum that the total of the invoices that it believes to be subject to a maritime lien is $125,952.59. (Rec. Doc. 68, Reply at 10). But Gulf Logistics believes that the correct amount should be $113,526.89. (Rec. Doc. 55-1, MSJ at 3). The Court leaves it to counsel to confirm their calculations.

GREY CUP. At the time of the fuel, lube oil and water purchases at issue—January 10, 2016 through May 3, 2016—the GREY CUP was under a time charter to Whistler Energy II, LLC, who was using the vessel in support of its offshore oil and gas activities. The purchases from C-Port/Stone were made by Whistler Energy, not by Gulf Logistics.[2] Whistler was placed into involuntary bankruptcy on March 24, 2016, leaving several of C-Port/Stone's invoices unpaid. C-Port/Stone's contention is that it obtained a maritime lien on the GREY CUP by operation of law each time it provided necessaries to the GREY CUP on credit, and to the extent that specific invoices remain unpaid, those liens remain extant and enforceable.

Via its motion for summary judgment, C-Port/Stone moves to enforce its liens against the GREY CUP, the end result of which would be that Gulf Logistics would have to pay for Whistler's unsatisfied debts in order to avoid having the GREY CUP arrested and sold.

Via its motion for summary judgment, Gulf Logistics moves to dismiss the complaint arguing that any liens against its vessel, if they actually attached, have been extinguished.

A bench trial is scheduled to commence on November 28, 2018.

## II. DISCUSSION

Summary judgment is appropriate only if "the pleadings, depositions, answers to

---

[2] It is not clear whether C-Port/Stone concedes that the sole purchaser on the products sold in conjunction with the unpaid invoices was Whistler Energy. But the evidence does not allow the inference that Gulf Logistics was the purchaser.

interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

The Court begins from the premise that invoices totaling $125,952.59 represent necessaries that C-Port/Stone provided to the GREY CUP on credit.[3]

Pursuant to the Commercial Instruments and Maritime Lien Act, a person who provides necessaries to a vessel on the order of the owner or a person authorized by the owner has a maritime lien on the vessel, and may bring a civil action in rem to enforce the lien. 46 U.S.C. § 31342(a), (b). The provider of the necessaries is not required to allege or prove in the action that credit was given to the vessel. *Id.* § 31342(a)(3).

A presumption arises that one providing supplies to a vessel acquires a maritime lien, and the party attacking this presumption has the burden of establishing that the personal credit of the owner or charterer was solely relied upon. *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 605 (5th Cir. 1986) (citing *TTT Stevedores v. M/V Jagat Vijeta*, 696 F.2d 1135, 1139 (5th Cir. 1983); *Gen. Elec. Credit & Leasing Corp. v. Drill Ship Mission Explor.*, 668 F.2d 811, 814 (5th Cir. 1982)). In order to overcome the presumption, evidence must be produced that the supplier purposefully intended to forego the lien. *Maritrend, Inc. v. Serac & Co.*, 348 F.3d 469, 471 (5th Cir. 2003) (citing *Equilease*, 793 F.2d at 606). Because the statutory presumption in favor of a maritime lien is a strong one, the court will not find a waiver of the lien if the evidence shows that the claimant relied on the credit of the vessel shows *to some extent. Id.* at 473.

Gulf Logistics argues that the evidence of record establishes that C-Port/Stone

---

[3] Gulf Logistics provided extensive argument in support of the contention that the cargo invoices totaling $103,210.95 were not for vessel necessaries, a point that C-Port/Stone now concedes. Gulf Logistics does not challenge the contention that the remaining invoice amounts were for vessel necessaries. The evidence supports no other inference.

looked solely to the credit of Whistler for payment. Gulf Logistics points out that C-Port/Stone processed a credit application for Whistler but not for the GREY CUP.

This contention is unpersuasive because the evidence establishes that C-Port/Stone had no notice as to which vessels would call at its dock for services requested by Whistler.[4] Gulf Logistics does not suggest how C-Port/Stone would have actually gone about affirmatively evaluating the creditworthiness of the GREY CUP or its owner.

Furthermore, the testimony of C-Port/Stone's representative is not similar to the corporate testimony in *Equilease, supra*, and *Racal Survey U.S.A., Inc. v. M/V Count Fleet*, 231 F.3d 183 (5th Cir. 2000), in that it does not establish that C-Port/Stone did not rely on the credit of the vessel to some extent. This is particularly true in this case where "traditional services" like the provision of fuel, water, and lube oil are provided directly to a vessel at the dock on credit. The fact that C-Port/Stone only sought to enforce the lien after Whistler was in bankruptcy, and the fact that C-Port/Stone treated the maritime lien as a "fallback" position when Whistler was unable to pay does not constitute evidence that C-Port/Stone purposefully intended to forego its lien on the vessel. *See Maritrend*, 348 F.3d at 473. In *Maritrend*, the court recognized that these practices are typical of what is done in the normal course of maritime business. *Id.* at 475. The reasoning in *Maritrend* also refutes Gulf Logistics' argument that reliance on the existence of the lien statute is not the same as relying on the credit of the vessel. Further, the standard

---

[4] In fact, the time charter between Whistler and C&G Boats, Inc. does not mention the GREY CUP by name.

language in C-Port/Stone's delivery tickets expressly stated that C-Port/Stone was affirmatively relying on its presumed right under maritime law to encumber the vessel in satisfaction of the invoices for the products delivered.

Gulf Logistics questions C-Port/Stone's diligence in checking Whistler's creditworthiness before selling it necessaries on credit. Gulf Logistics also contends that C-Port/Stone continued to extend credit to Whistler even though it was not paying invoices on time. Gulf Logistics argues that C-Port/Stone should not reap the benefit of having a maritime lien cover its own poor credit practices.

Even if the jurisprudence recognized a punitive denial of the lien for reckless conduct by the creditor, the Court is not persuaded that C-Port/Stone's practices and conduct in this case rise to that level.

Gulf Logistics has failed to point to evidence sufficient to overcome the presumption that C-Port/Stone relied upon the credit of the GREY CUP with respect to the necessaries it provided. The Court finds unpersuasive Gulf Logistics' alternative contention that issues of fact as to whether C-Port/Stone relied on the credit of the GREY CUP to any extent preclude summary judgment. This Court would be the trier of fact at trial. None of the evidence is in dispute, only the legal ramifications of that evidence, which the Court appropriately resolves at this time.

In sum, C-Port/Stone obtained valid maritime liens on the GREY CUP totaling $125,952.59.[5]

---

[5] As the Court explained in footnote 1 above, the Court has taken this number from C-Port/Stone's reply memorandum and has not independently tallied the invoices at issue to arrive at this total. The Court assumes that if $125,952.59 is not the correct total then the parties can

Even if C-Port/Stone obtained valid maritime liens on the M/V GREY CUP, Gulf Logistics argues that C-Port/stone should not be able to enforce the liens insofar as they pertain to "gap period" invoices or invoices for which C-Port/Stone obtained "new value" credit in defense of Whistler's bankruptcy trustee's preference action against C-Port/Stone.[6]

Gulf Logistics' argument with respect to gap period invoices is that the relief order from the bankruptcy court dictated that Whistler would pay those invoices. But until the invoices are actually paid the liens on the GREY CUP related to those invoices remain extant and enforceable. C-Port/Stone need not exhaust its remedies against Whistler in order to enforce its liens.

Gulf Logistics' argument with respect to "new value" credit is that C-Port/Stone's liens should be reduced dollar for dollar for any amounts for which C-Port/Stone received new value credit in Whistler's bankruptcy when defending the trustee's preference action against C-Port/Stone. Gulf Logistics argues that all of the invoices at issue in this case would be subject to such an offset because C-Port/Stone used each of the invoices as "new value" to offset its preference liability to the bankruptcy estate.[7]

The Court is persuaded that the pertinent question insofar as extinguishment of a

---

figure out between themselves what it should be.

[6] The gap period in this case is the time between March 24, 2016 when the involuntary petition was filed, and May 25, 2016 when the order for relief was entered.

[7] Under the Bankruptcy Code, the trustee may avoid a debtor's preferential payments to creditors made within 90 days before the filing of the bankruptcy petition. *In re Ramba, Inc.*, 416 F.3d 394, 398 (5th Cir. 2005) (citing 11 U.S.C. § 547(b)). But the trustee may not avoid a transfer (payment) to the extent that after such transfer the creditor gave "new value" to the debtor. *In re SGSM Acquis. Co.*, 439 F.3d 233, 241 (5th Cir. 2006) (quoting 11 U.S.C. § 547(c)(4)).

maritime lien is concerned is whether and to what extent Whistler's debts to C-Port/Stone have been satisfied, whether by payment or by compromise. The Court is not so much concerned with the former (payment) because there has been no "payment" by either Whistler or a third party, and the Court is inclined to agree with C-Port/Stone's contention that the Bankruptcy Code's imputation of preference payments to new value debt does not likely in and of itself extinguish a statutory maritime lien. After all, a successful new value defense as to a preference should leave the creditor with a claim against the debtor for the antecedent debt.

The Court is more concerned with whether C-Port/Stone's maritime liens on the GREY CUP were extinguished inadvertently via compromise because it is the Court's understanding that C-Port/Stone settled the preference action that Whistler's trustee brought against it. The Court has no knowledge as to the terms of that settlement and whether it involved a compromise of all of C-Port/Stone's claims against Whistler, or if not for all of the claims, whether the debt still owed is at least $125,952.59, the total amount of the liens that C-Port/Stone is seeking to enforce. In other words, the Court is not persuaded that C-Port/Stone can enforce a lien against the GREY CUP for more than what remains on Whistler's debt to C-Port/Stone. The Court therefore denies C-Port/Stone's motion for judgment as a matter of law at this time.

Finally, the Court agrees with Gulf Logistics' argument that the breach of contract and quantum meruit claims against it should be dismissed. A vessel is a distinct entity from its owner and it statutorily liable for its own debts. *World Fuel Servs., Inc. v. MAGDALENA GREEN M/V*, 464 Fed. App'x 339, 341 (5th Cir. 2012) (citing *Equilease,*

793 F.2d at 602). C-Port/Stone does not appear to press these claims but even so the record does not support the inference that Gulf Logistics can be held liable under either theory.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the : **Motion for Summary Judgment (Rec. Doc. 56)** filed by Plaintiff, C-Port/Stone, LLC is **GRANTED IN PART AND DENIED IN PART** as explained above;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 55)** filed by Defendants, Gulf Logistics, LLC and M/V GREY CUP is **GRANTED IN PART AND DENIED IN PART** as explained above.

September 28, 2018

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE